IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARRYL E. HOLMAN, | ) |
| Plaintiff, | ) |
| | ) No. 18-cv-05246 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| MARK CAREY, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

After an extended slow-motion car chase, Aurora police officers arrested Plaintiff Darryl E. Holman for numerous alleged offenses, including aggravated driving under the influence and fleeing and eluding. Holman subsequently sued one of the arresting officers, Defendant Mark Carey, under 42 U.S.C. § 1983, claiming that Carey used excessive force during Holman's arrest. Now before the Court are Holman's and Carey's cross-motions for summary judgment. (Dkt. No. 64, 67.) For the reasons provided below, both motions are denied.

BACKGROUND

Unless otherwise noted, the following facts are undisputed.[1]

On the evening of August 23, 2017, Holman picked up and drove his car from a car dealership to his sister's house, and then to a laundromat in downtown Aurora, Illinois. (Pl.'s

---

[1] The Court notes that Holman failed to comply fully with several provisions of the Northern District of Illinois's Local Rule 56.1, which governs motions for summary judgment. For instance, Holman cites directly to the record in his brief in support of his motion for summary judgment, rather than citing specific paragraphs in either his or Carey's statements of facts as required by Local Rule 56.1(g). Additionally, many paragraphs in Holman's statement of material facts do not contain citations to specific evidentiary material as required by Local Rule 56.1(d). Nonetheless, Holman's non-compliance with Local Rule 56.1 does not materially complicate the Court's task in evaluating the parties' motions. Thus, the Court exercises its discretion to excuse Holman's non-compliance with the rules with an admonishment that it not be repeated.

Resp. to Def.'s Statement of Facts ("PRDSF") ¶¶ 1–4, Dkt. No. 73.) After leaving the laundromat, Holman drove down a street with a female passenger in the car with him; he does not recall any subsequent events until Aurora police officers pulled him over. (PRDSF ¶¶ 4, 6–8.) What transpired next, however, is depicted on dashboard camera footage from the patrol cars of three officers. (*See* Def.'s Statement of Material Facts ("DSMF"), Ex. 4, Fanscali Squad Car Video, Dkt. No. 65-5; DSMF, Ex. 5, Talley Squad Car Video, Dkt. No. 65-6; DSMF, Ex. 6, Carey Squad Car Video, Dkt. No. 65-7.)

Carey, as the City of Aurora's K-9 police officer, partners with a police dog on patrols. (*See* PRDSF ¶ 17; DSMF, Ex. 2, Mark Carey Deposition Transcript, Dkt. No 65-3.) When officers began following Holman, he was driving with the driver's door open and swerving in and out of oncoming lanes. (PRDSF ¶¶ 11–13; Fanscali Squad Car Video.) Throughout the officers' pursuit of his car, Holman drove on two flat tires, and he hit street curbs multiple times. (PRDSF ¶¶ 13–15; Fanscali Squad Car Video.) Additionally, Holman's vehicle lost a tire during the pursuit. (PRDSF ¶¶ 13–15; Fanscali Squad Car Video.)

Upon exiting the car with his hands up, Holman removed his sweatshirt and laid on the ground in response to the officers' orders. (PRDSF ¶ 15; Fanscali Squad Car Video.) A group of officers then surrounded Holman, and Carey also approached Holman with his police dog "Beny." (PRDSF ¶¶ 17, 28; Fanscali Squad Car Video; Talley Squad Car Video.) Simultaneously, a different officer ran toward Holman's car to stop it from moving. (Fanscali Squad Car Video.) Carey brought the dog, who was jumping and barking, near Holman's face and told him "[y]ou're going to get dog bit, motherfucker." (PRDSF ¶ 18; Fanscali Squad Car Video.) Ultimately, the K-9 never touched or bit Holman. (PRDSF ¶ 18.) Once other officers cuffed Holman's hands behind his back and subdued him, Carey removed the dog back to his squad car and returned to the scene.

(PRDSF ¶ 19; Fanscali Squad Car Video.) Soon after, officers discovered another occupant in Holman's car, and several officers ran toward it screaming "[l]et me see your hands." (PRDSF ¶ 20; Fanscali Squad Car Video.) Carey and Sergeant Todd Fanscali remained with Holman. (PRDSF ¶ 20.) Fanscali stood over Holman's body. (Fanscali Squad Car Video; Talley Squad Car Video.)

While on the ground, Holman proceeded continuously to lift his head up and yell "Mrs. Stewart, I'm alive." (PRDSF ¶ 21; Fanscali Squad Car Video.) As a result, Carey believed that Holman might be signaling nearby accomplices. (DSMF ¶ 46, Dkt. No. 65.) Carey then picked Holman's sweatshirt from off the ground and flipped it onto Holman's person. (PRDSF ¶ 21; Fanscali Squad Car Video.) Carey claims that he put the sweatshirt on Holman's head, back, or shoulder area. (DSMF ¶¶ 21, 48.) Fanscali also recalled that Carey tossed the sweatshirt onto Holman's shoulder. (PRDSF ¶ 55.) Holman instead contends that Carey placed the sweatshirt on his head or face area. (PRDSF ¶¶ 21, 48).

After Holman shouted "Don't shoot" and "My hands are up," the videos appear to show Carey's foot making physical contact with Holman's person. (Fanscali Squad Car Video; Talley Squad Car Video.) But the point of contact is unclear due to Holman's body position in between the dashboard camera and Carey's foot. During his deposition, Carey testified that he never made physical contact with Holman. (DSMF ¶ 49.) Fanscali also denied witnessing any physical contact between Carey and Holman. (PRDSF ¶ 55.) But Carey later describes this incident as "apparent contact between [his] left foot and Holman's body;" specifically, Holman's chest or right shoulder area. (DSMF ¶¶ 21, 29.) Carey claims that he intended to "slide or kick" the sweatshirt in Holman's direction to stop his screaming. (DSMF ¶ 51.) Notably, in briefing the summary judgment motions, Carey seems to concede that there was physical contact, as he states that the

3

"contact was de minimis," and he "used minimal force in an effort to help control a tense and uncertain situation." (Def.'s Mem. in Supp. of Def. Carey's Mot., Dkt. No. 66; Def.'s Resp. in Opp'n to Pl. Holman's Mot., Dkt. No. 70.) In contrast, Holman asserts Carey kicked him in the face or neck region without provocation. (PRDSF ¶¶ 21, 29, 49.) Whatever transpired with respect to the kick itself, Carey subsequently ordered Holman to "stop talking," and Fanscali told Holman to relax and "stay where you're at." (DSMF ¶ 21; Fanscali Squad Car Video.) Holman then told Carey and Fanscali "I'm sorry," and asked them not to hurt him. (Fanscali Squad Car Video.)

Next, Holman lifted his head after the apparent physical contact. (Fanscali Squad Car Video; Talley Squad Car Video.) Holman then shifted from his stomach to his back to converse with Fanscali. (PRDSF ¶ 22; Fanscali Squad Car Video.) Holman made a series of statements, such as claiming that the passenger in his car had been trying to kill him. (Fanscali Squad Car Video.) Around the same time, other officers on the scene extracted the passenger from Holman's car and placed him on the ground. (PRDSF ¶ 22; Fanscali Squad Car Video.) The portions of the videos showing Holman conclude with Fanscali and other officers assisting Holman in standing up and walking away from the scene. (PRDSF ¶ 24; Fanscali Squad Car Video.) Holman was later charged with several offenses, and he pleaded guilty to aggravated driving under the influence and driving on a suspended or revoked license. (PRDSF ¶¶ 60–61.)

Holman claims that Carey chipped Holman's two left lower front teeth when Carey's foot made contact with Holman's head. (PRDSF ¶ 34). Yet Aurora Police Department booking records from Holman's arrest indicate that he did not report any injuries from his encounter with the police, except that he was feeling weak. (PRDSF ¶ 36; DSMF, Ex. 8, Booking Form, Dkt. No. 65-

9.[2]) Following the incident, Holman visited a hospital for treatment for a hyperthyroid condition, but he did not report injuries to his teeth to hospital personnel. (PRDSF ¶ 34).

Based on the above-described events, Holman's amended complaint in this lawsuit asserts a 42 U.S.C. §1983 claim for excessive force against Carey, alleging that the officer threatened Holman with a dog, placed a sweatshirt over his face and made it hard for him to breathe, and kicked Holman with his foot. (Second Am. Compl. ¶¶ 1, 14–19, Dkt. No. 20.) Holman explains in his briefing that he is not alleging three instances of excessive force; rather, his excessive force claim centers around "Carey kicking Holman in the head, neck, or shoulder area while Holman was compliant, defenseless, and fully restrained on the ground." (Pl.'s Resp. in Opp'n to Def. Carey's Mot., Dkt. No. 74.) He maintains that the "canine show of force" and "sweatshirt over the head" are additional facts to aid the Court in evaluating the reasonableness of Carey's actions. (*Id.*)

## DISCUSSION

The Court grants summary judgment if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When addressing cross-motions for summary judgment, the Court must consider the motions "one at a time, construing all facts and drawing all

---

[2] Contrary to Holman's argument that the booking records are inadmissible hearsay evidence (PRDSF ¶¶ 36–38), booking records may be admissible under the public records hearsay exception, which allows for the admission of police records in civil cases. *See* Fed. R. Evid. 803(8)(A)(ii).

reasonable inferences in favor of the non-moving party." *Black Earth Meat Mkt., LLC v. Village of Black Earth*, 834 F.3d 841, 847 (7th Cir. 2016).

    **I.**    **Holman's Summary Judgment Motion**

The Court first addresses Holman's summary judgment motion. Holman claims that Carey violated his constitutional rights by using excessive force against him during his arrest. Specifically, Holman contends that he is entitled to summary judgment because the video evidence indisputably demonstrates that Carey used excessive force by kicking him in the head or neck area while he was handcuffed and not resisting or evading arrest.

Holman's excessive force claim is assessed under the Fourth Amendment's objective-reasonableness standard. *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018). This inquiry entails an examination of the totality of the circumstances confronting officers, "viewed from the perspective of a 'reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). Important factors in determining officers' reasonableness include the severity of the crime, whether the arrestee posed an immediate threat to officers' or the public's safety, and whether he actively resisted arrest or tried to flee. *Abbott v. Sangamon County*, 705 F.3d 706, 724 (7th Cir. 2013). Physical injury is not a required showing for a successful excessive force claim. *See Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009); *Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008). But a factfinder may consider the types of injuries the plaintiff suffered as evidence of the degree of the defendant's force and reasonableness of that force. *See McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) (citation omitted). Although questions of reasonableness and excessive force are usually appropriate for the jury, "the Court must resolve the issue as matter of law if there are sufficient

undisputed material facts showing that the officer acted reasonably under the circumstances." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015).

Here, the Court finds that there is a genuine issue of material fact concerning the nature and degree of the force Carey used when his foot made physical contact with Holman. Carey disputes Holman's assertion that he kicked Holman in the face; instead, he contends that the physical contact was minimal and only to Holman's chest or right shoulder area. Carey further emphasizes the slight physical injury to Holman, if any. The video footage does appear to show physical contact between Carey's foot and Holman's body while Holman was handcuffed, seemingly around Holman's shoulder area.

While the Court generally views disputed facts in the light most favorable to the non-moving party on summary judgment, where video evidence discredits the non-moving party's account, the Court is not required to believe the non-moving party's version of events. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). However, the Seventh Circuit has stressed that this exception to the typical summary judgment standard is "narrow" and inapplicable "where the video record is subject to reasonable dispute." *Gant v. Hartman*, 924 F.3d 445, 449–50 (7th Cir. 2019). Essentially, the video evidence must do more than offer "*some* support" for the moving party's version of events but instead must show that the non-moving party's version of events is "blatantly and demonstrably false." *Id.* (internal quotation marks omitted). Here, because there is not an entirely clear view of the physical contact from Carey's angle to show the amount of force behind Carey's foot motion and where his foot landed, the videos do not blatantly contradict Carey's claim that his foot only made physical contact with Holman's chest or right shoulder area. Moreover, a reasonable juror could view the videos as supporting Carey's account that the physical contact was to Holman's shoulder area and the use of force was not quite a kick. There is

also a dispute of fact as to whether Holman sustained damage to his front teeth from Carey's use of force. A lack of injury could undermine Holman's claim of excessive force.

Similarly, a genuine issue of material fact exists concerning the reasonableness of Carey's use of force. A certain amount of force to effect an arrest is expected. *See Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." (internal quotation marks omitted)). Nonetheless, a police officer cannot "continue to use force against a suspect who is subdued and complying with the officer's orders;" this principle, however, rests on the suspect actually being subdued. *Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009). Officers also cannot use "significant force against a 'nonresisting or passively resisting subject.'" *Dockery*, 911 F.3d at 467 (quoting *Abbott*, 705 F.3d at 732). Only minimal force can be used against such arrestees. *Abbott*, 705 F.3d at 732; *cf. Smith v. Ball State Univ.*, 295 F.3d 763, 766, 770 (7th Cir. 2002) (finding that officers did not use excessive force by using a "straight arm bar" technique to remove an intoxicated and nonresponsive driver from a vehicle). Even accepting that Holman was subdued and compliant at the time of his arrest, he had just led police in a car chase for several minutes where the crime at issue was aggravated driving under the influence—a serious offense. Prior to Carey's use of force, officers had just discovered another, previously unseen occupant hiding in Holman's car, and Holman continued yelling. Thus, drawing all reasonable inferences in Carey's favor, a jury could conclude that Carey used reasonable, minimal force to quiet Holman and maintain control as other officers tried to subdue the other occupant in the car.

Plaintiff's summary judgment motion is accordingly denied.

## II. Carey's Summary Judgment Motion

The Court next examines Carey's summary judgment motion. Carey first argues that summary judgment in his favor is appropriate because the undisputed facts establish that he did not use unreasonable excessive force as a matter of law.

As previously noted, there is a genuine issue of material fact regarding the nature and degree of the force Carey used when his foot made physical contact with Holman. Despite the video evidence apparently showing physical contact to Holman's shoulder area, the exact location of the physical contact could be subject to reasonable dispute because the videos do not clearly show, from Carey's angle, the degree of force behind the foot motion and where his foot landed. Viewing the evidence in the light most favorable to Holman, a reasonable jury could conclude that Carey's foot motion was in fact a kick, regardless of where Carey's foot landed on Holman's person.

The Court also finds evidence that could support a finding that Carey used unreasonable force against Holman during his arrest. There is ample evidence that Holman was subdued with his hands cuffed behind his back, compliant, and neither physically nor verbally resistant to officers' orders at the time of the physical contact between Carey's foot and Holman's person. As explained above, it is well-established that using significant force on a nonresisting or passively resisting arrestee is excessive. The presence of several other officers on the scene responding to the occupant found in Holman's car and Fanscali standing over the handcuffed Holman for most of the arrest arguably undermines Carey's contentions that Holman's continued screaming posed a threat to the officers' or the public's safety and that force was necessary to maintain control. This case is inapposite from such cases where officers used force against individuals interfering with the officers' ability to arrest another suspect and thus were found not to have used excessive

9

force. *See, e.g.*, *Dawson*, 803 F.3d at 833–34 (7th Cir. 2015) (finding officers acted reasonably when they kicked and tackled an individual who had approached within feet of officers while they were attempting to subdue a suspect who was physically resisting arrest). And finally, a lack of injury or minimal injury are not dispositive for proving an excessive force claim.

Alternatively, Carey submits he should be awarded summary judgment because he is protected by qualified immunity. Qualified immunity protects public officials from being monetarily liable unless the evidence shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). To be clearly established, "the contours of the right" must be "sufficiently clear that a reasonable official would understand" his actions are unlawful, but a "case directly on point is not required." *Abbott,* 705 F.3d at 725, 731 (quoting *Anderson,* 483 U.S. at 640). Ultimately, "existing precedent must have placed the . . . constitutional question beyond debate." *Id.* (quoting *al-Kidd*, 563 U.S. at 741).

In this case, there are disputed issues of fact regarding whether Carey's physical contact with Holman's person constituted a kick, whether Carey's use of force was significant enough to chip Holman's tooth, and whether Carey's use of force was a reasonable means of maintaining control. "[A]n unnecessary kick, after a suspect is under control, violates the suspect's clearly established rights." *Johnson v. Rogers*, 944 F.3d 966, 970 (7th Cir. 2019); *see also Powell v. City of Berwyn*, 68 F. Supp. 3d 929, 943 (N.D. Ill. 2014) (concluding that reasonable officers should have known that they could not tackle, strike, and use pepper spray on a nonresisting person); *Gregory v. Oliver*, 226 F. Supp. 2d 943, 950 (N.D. Ill. 2002) (holding it was clearly established that performing a leg sweep on a handcuffed arrestee was unconstitutional). Viewing the evidence in the light most favorable to Holman, a reasonable jury could determine that Carey kicked

Holman with enough force to chip his tooth while Holman was under control, which would violate Holman's clearly established rights. The Court therefore denies Defendant's request for summary judgment based on qualified immunity.

## CONCLUSION

For the foregoing reasons, both Holman's motion for summary judgment (Dkt. No. 67) and Carey's motion for summary judgment (Dkt. No. 64) are denied.

ENTERED:

Dated: September 26, 2022

Andrea R. Wood
United States District Judge

11